IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Nicole M. Garman,<br><br>   Plaintiff,<br><br> v.<br><br>Commissioner of Social Security,<br><br>   Defendant. | Civil No. 16-5507(RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

THIS matter comes before the Court upon an appeal by Plaintiff Nicole M. Garman (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability benefits for the period beginning January 29, 2010. (Compl. ¶ 5) [Dkt. No. 1]. For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

I. **Disability Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v). In Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) the Third Circuit described the Commissioner's inquiry at each step of this analysis, as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

**II. Background**

The Court recites only the facts that are necessary to its determination on appeal, which is limited to the weight afforded to the opinions of two doctors in the ALJ's calculation of Plaintiff's Residual Functional Capacity ("RFC") and whether

3

there are a "significant number" of jobs in the national economy that Plaintiff is capable of performing.

A. <u>Brief Medical History</u>

Plaintiff was born on April 10, 1979, and was 30 years old on the alleged date of disability onset, January 29, 2010. (Administrative Record "A.R." 187, 12). Plaintiff suffers from mitochondrial disorder which, according to her testimony, was exacerbated when her infant son died in January, 2010, and has never remitted. (<u>Id.</u> at 46). Plaintiff also complains of spinal deformity at L4-L5, chronic pain, joint inflammation, chronic severe fatigue, anxiety, and depression. (<u>Id.</u> at 46-47, 223). Prior to the alleged disability onset date, Plaintiff was working as a medical records coder. (<u>Id.</u> at 204).

In her Adult Function Report, completed October 27, 2012, (<u>Id.</u> at 212-219), Plaintiff indicated that she required her parents' help caring for her children. (<u>Id.</u> at 213). Plaintiff also indicated that she was tired all the time and needed daily naps, needed help remembering what medication she had and had not taken, and could no longer handle her family's finances. (<u>Id.</u> at 214-15). Plaintiff did not, however, note any issues with personal care, and she could still cook, clean, and do laundry. (<u>Id.</u> at 213, 215). She engages in limited social activity, including using social media daily, speaking to her parents and siblings, and attending church twice a month, but

has anxiety and cannot be around large crowds. (Id. at 216). Physically, Plaintiff claims to have had issues walking, lifting, squatting, climbing stairs, sitting, and using her hands. (Id.)

Beginning on February 10, 2011, Plaintiff's primary care physician has been Dr. Phillip Varner, D.O. (Id. at 306). In her new patient evaluation, Dr. Varner found Plaintiff positive for fatigue, back pain and joint pain, dizziness, headaches, memory loss, weakness, anxiety, depression, and difficulty concentrating, among other things. (Id.) Plaintiff visited Dr. Varner on at least ten occasions between February 2011 and August 2013. (Id. 306-28, 377, 380). During these visits, Plaintiff presented with a variety of symptoms including (in addition to those listed after Plaintiff's initial visit) difficulty walking, hands shaking, wrist pain, decreased range of motion in the bilateral hip and knees, and tenderness in both knees. (Id.)

On December 12, 2012, Dr. Ronald Bagner, M.D., performed a consultative examination of Plaintiff. (A.R. 370). Dr. Bagner's impression was that Plaintiff had a "lumbosacral strain," walked with a slow, but normal gait, and did not appear uncomfortable sitting or performing simple physical tasks such as getting on and off of the examination table. (Id. at 371).

5

On December 18, 2012, Dr. Theodore Brown, Ph.D., conducted a consultative mental status examination of Plaintiff. (Id. at 365). Dr. Brown noted that Plaintiff was "pleasant and cooperative throughout the [e]xamination," but diagnosed her with, among other things, depression and anxiety. (Id. at 367).

B. Doctor Varner's Opinion

Beyond his treatment notes, Dr. Varner provided a Medical Source Statement to the Commissioner. (Id. at 392-99). In this statement, Dr. Varner diagnosed Plaintiff with mitochondrial disease with the following symptoms: musculoskeletal pain, fatigue, headaches, general malaise, extremity numbness pain or tingling, difficulty walking/abnormal gait, muscle weakness, muscle spasms, loss of manual dexterity, swelling, insomnia, sleep disturbance, and depression. (Id. at 392, 394). He indicated that he believed Plaintiff's claims as to the severity, duration, and frequency of her symptoms were credible. (Id. at 393).

Dr. Varner further indicated that Plaintiff would need to lie down or recline for one and a half to two hours on a daily basis, that Plaintiff's impairments would be likely to produce good days and bad days, that Plaintiff would be "off task" for at least twenty-five percent of every day. (Id.) According to Dr. Varner, during every eight hour workday, Plaintiff would need to elevate her legs for four hours. (Id. at 395). Dr.

Varner further believed that Plaintiff suffered from levels of pain and fatigue significant enough to prevent her from performing normal, full-time work activities more than "3-4 days per month," and that physical activity would likely greatly increase Plaintiff's pain level. (Id. at 396-97).

   C. State Agency Consultant Assessments

On December 24, 2012, Dr. Sharon Flaherty, Ph.D., a state agency psychological consultant, performed a Mental Residual Function Capacity Assessment of Plaintiff. (Id. at 100-02). Dr. Flaherty found that Plaintiff had understanding and memory limitations. (Id. at 101).

Specifically, Dr. Flaherty found that Plaintiff had the following moderate mental limitations: (1) ability to understand and remember very short and simple instructions; (2) ability to carry out very short and simple instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform a consistent pace without an unreasonable number and length of rest periods; (6) ability to accept instructions and respond appropriately to criticism from supervisors; (7) ability to get along with coworkers or peers without distracting them or

7

exhibiting behavioral extremes; (8) ability to respond appropriately to changes in the work setting; (9) and ability to travel in unfamiliar places or use public transportation. (Id. at 101-02).

Dr. Flaherty also found that Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions. (Id. at 101). She noted that Plaintiff could "understand, remember and follow short [and] simple instructions[,] . . . learn [and] perform simple, routine tasks[,] . . . communicate and interact with others[,] . . . and adapt to minor change." (Id. at 101-02). As a result of these findings, Dr. Flaherty concluded that "[f]rom a psych standpoint, the [Plaintiff] can sustain focus, memory, basic social interaction and mental pace/persistence for simple, routine tasks." (Id. at 102).

Dr. Robert Starace affirmed Dr. Flaherty's opinion on May 21, 2013. (Id. at 113-15).

D. Procedural Background

Plaintiff applied for Social Security Disability Insurance Benefits ("DIB") on October 5, 2012 alleging that she was disabled due to mitochondrial disease, spinal deformity at L4-L5, chronic pain, depression, anxiety, joint inflammation, and chronic severe fatigue. (A.R. 187-88, 220, 223). Plaintiff's

claim was denied on January 10, 2013, (A.R. 92-118), and reconsideration was denied on May 21, 2013. (A.R. 128-33).

On August 24, 2013, Plaintiff requested a hearing, (A.R. 134-35), and on January 22, 2015 a hearing was held before the Honorable Mark Barrett. (A.R. 31). Plaintiff, who was represented by counsel, testified at the hearing. On April 30, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. (A.R. 12-25). The Appeals Council denied Plaintiff's request for review on July 6, 2016, (A.R. 1-3), at which time the ALJ's decision became the final determination of the Commissioner.

E. The ALJ's Decision

The ALJ applied the requisite five-step analysis, ultimately concluding that Plaintiff was not "disabled." At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 29, 2010, through her date last insured of March 31, 2013. (Id. 14). At Step 2, The ALJ found that Plaintiff had five severe impairments: obesity, depression, anxiety, mitochondrial disorder, and a lumbar back sprain.[1] (Id. at 14-15). Next, at the Third Step, the ALJ determined that,

---

[1] The ALJ also addressed Plaintiff's history of cholecystectomy, but found that it was non-severe because it "result[ed] in minimal, if any, limitation on the claimant's ability to perform work-related activities when properly treated." (A.R. 15).

9

through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Id.)

Based on his findings, the ALJ determined that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a), except that the [Plaintiff] is limited to simple, repetitive work." (Id. at 23). In making these findings, the ALJ looked to the Plaintiff's testimony, the Adult Third Party Function Report completed by Plaintiff's husband, and the Plaintiff's medical record including the treatment notes and reports of the multiple doctors who evaluated Plaintiff.[2] (Id. at 18-23). The ALJ found that Plaintiff's allegations regarding the severity and intensity of both her physical and mental limitations were not supported by the objective medical evidence. (Id.) The ALJ also afforded little weight to Dr. Varner's opinion regarding Plaintiff's limitations, finding that it was "inconsistent with the objective medical evidence and record as a whole," including the doctor's own treatment notes

---

[2] With regard to Plaintiff's physical pain and symptoms, the ALJ's decision references the notes of Dr. Varner, Dr. Peter Tsao, Dr. Brown, Dr. Bagner, and Dr. David Greenbaum. (A.R. 19-20). With regard to Plaintiff's anxiety and depression, the ALJ referenced the notes of Dr. Varner, Dr. Brown, Dr. Sharon Flaherty, Dr. Robert Starace; Dr. Jyothsna Shastry; and Dr. Arvind Chopra. (Id. at 20-23).

and a CT Scan of Plaintiff's lumbar spine.[3] (Id. at 22). "Substantial weight," however, was assigned to the opinion of Dr. Flaherty.[4] (Id.)

After performing the RFC assessment, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Id. at 23). Furthermore, the ALJ concluded that Plaintiff was a "younger individual" as of the alleged disability onset date, had at least a high school education and was able to communicate in English. (Id. at 23). He further determined that transferability of job skills was immaterial to his determination under the medical-vocational rules. (Id. at 24). Then, considering Plaintiff's age (33 years old as of the alleged disability onset date (Id. at 23)), education, work experience, and RFC as determined, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Id. at 24-25).

Because Plaintiff had both exertional and non-exertional impairments, the ALJ used the medical-vocational rules as a framework. He further stated that Plaintiff's "non-exertional impairments do not significantly erode the vocational base contemplated by the medical-vocational rules" and that "expert

---

[3] Plaintiff challenges the ALJ's assignment of weight, or lack thereof, to Dr. Varner's opinion.
[4] Plaintiff contends that too much weight was afforded to Dr. Flaherty's opinion, and that the ALJ did not properly consider the entirety of Dr. Flaherty's findings.

11

vocational testimony is not needed in this case to assess [Plaintiff's] work capability."[5] (Id. at 25.) Thus, Plaintiff's application was denied. (Id.)

**III. Standard of Review**

When reviewing an ALJ's final decision on disability benefits, courts are required to uphold the ALJ's factual determinations if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Dellapolla v. Comm'r, 662 Fed. Appx. 158, 160 (3d Cir. 2016) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971))).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)); see also Guerrero v. Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The ALJ's responsibility is to analyze all the evidence

---

[5] The ALJ's decision not to elicit expert vocational testimony, or to consider vocational evidence of any kind, is the final issue presented for appeal.

12

and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. Appx. 289 (3d Cir. 2007). As stated by the Third Circuit,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the [administrative law judge] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. See Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Id. at 262 (citing Schaudeck v. Comm'r, 181 F.3d 429, 431 (3d Cir. 1999).

## IV. Analysis

Plaintiff presents three issues for review by this Court. First, Plaintiff argues that the ALJ erred in failing to consult a vocational expert despite arriving at an RFC for less than a full range of sedentary work. (Pl.'s Br. at 2). Second, Plaintiff argues that the ALJ erred in both his determination of credibility and the weight accorded to the opinions of Dr. Varner because he failed to consider the impact of the Plaintiff's mitochondrial disorder, "particularly with regard to fatigue and pain." (Id.) Finally, Plaintiff argues that the ALJ erred in assigning substantial weight to the opinions of the Dr. Flaherty, "while not incorporating her findings into the RFC or explaining why the omitted findings were rejected." (Id.) Because the Court finds that the ALJ failed to fully address the reasons why Plaintiff's non-exertional limitations do not significantly erode his occupational base, the Court will remand for further proceedings.

### A. Failure to Consult Vocational Expert

Plaintiff argues that the ALJ's failure to consult a vocational expert to determine the effect of Plaintiff's nonexertional limitations[6] on the occupational base violated Acquiescence Ruling 01-1(3) ("AR 01-1(3)"). (Pl.'s Br. 15-18). The Commissioner issued AR 01-1(3) after the Third Circuit ruling in Sykes v. Apfel, in which the Court held that, where a claimant had nonexertional limitations, the existence of significant numbers of jobs in the national economy could not be established by reliance solely upon the medical-vocational grids. 228 F.3d 259, 274. Rather, when a claimant has exertional and nonexertional limitations, the Commissioner must present evidence consisting of (1) the testimony of a vocational expert or other similar evidence or (2) official administrative notice that a non-exertional limitation does not significantly erode a claimant's occupational base. Id. at 261.

In response to Sykes, the Commissioner issued AR 01-1(3), which provides:

> Before denying disability benefits at step five when a claimant has a nonexertional limitation(s), we must: (1) take or produce vocational evidence such as from a vocational expert, the DOT or other similar evidence (such as a learned treatise); or (2) provide notice that we intend to take or are taking administrative notice of the fact that the particular nonexertional limitation(s) does not significantly erode the occupational job base, and allow the claimant the opportunity to respond before we deny the claim.

---

[6] Based on evaluations on Plaintiff's mental health, the ALJ limited her to "simple, repetitive work." (A.R. at 23).

15

> This Ruling does not apply to claims where we rely on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim being adjudicated affects a claimant's occupational job base. When we rely on such an SSR to support our finding that jobs exist in the national economy that the claimant can do, we will include a citation to the SSR in our determination or decision.

AR 01-1(3) clarified that under the holding in Sykes, the ALJ is not required to rely on testimony from a vocational expert, but may instead rely upon a Social Security Ruling ("SSR"). See Allen v. Barnhart, 417 F.3d 396, 406 (3d Cir. 2005). Moreover, the Third Circuit has since held that the ALJ's failure to provide notice of his intention to rely upon an SSR is not fatal, but requires the court to apply close scrutiny to said reliance. Meyler v. Comm'r of Soc. Sec., 238 F. Appx. 884, 890 (3d Cir. 2007)(citing Allen, 417 F.3d at 408); see also Breslin v. Comm'r of Soc. Sec., 509 F. Appx. 149, 155 (3d Cir. 2013); Smalls v. Comm'r of Soc. Sec., No. 09–2048, 2010 WL 2925102, at *9 (D.N.J. July 19, 2010)("advanced notice is not unequivocally required in every circumstance. But . . . when advanced warning is not given, the ALJ's reliance on the Ruling is subject to 'close scrutiny.'").

If, however, the ALJ chooses to rely on an SSR instead of a vocational expert or other similar vocational evidence to find that the occupational base is not significantly eroded by a

claimaint's nonexertional limitations, it "must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." Allen, 417 F.3d at 407. Furthermore, the ALJ must specifically cite the SSR or SSRs relied upon and "explain why the SSR is 'relevant or controlling.'" See AR 01-1(3); see also Williams v. Comm'r of Soc. Sec., No. 12-5637, 2013 WL 4500335, at *9 (D.N.J. Aug.21, 2013) (citing Allen, 417 F.3d at 406).

Defendant argues that the ALJ's decision not to rely on vocational evidence was proper here because he "relied on grid rule 201.28 and cited to SSR 85-15, SSR 83-10, and the case Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981)." The Court disagrees. These SSRs may address all of Plaintiff's non-exertional limitations, but the Court finds that the ALJ did not sufficiently explain how, and thus remand on this point is necessary.[7]

---

[7] Plaintiff's contends that the ALJ's reliance on Kirk v. Secretary of HHS was improper in light of the fact that it is an out of circuit case decided prior to Sykes. There are three ways for the ALJ to properly decide that the job market is not significantly eroded without the use of vocational evidence. The only way that the ALJ may do so without providing prior notice to Plaintiff is to rely on an SSR. See AR 01-1(3). Defendant does not contend that the ALJ provided prior notice to Plaintiff here, and thus the only real issue is whether the ALJ properly relied on either SSR 85-15 or SSR 83-10.

The ALJ cited SSR 85-15 only as support for the principle that where a claimant has solely nonexertional limitations, section 204.00 of the medical-vocational guidelines provides a framework for decision-making.[8] (See A.R. 24). In the last paragraph of his decision, the ALJ provided that

> When a claimaint has both exertional and non-exertional impairments, the medical-vocational rules provide a "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations" . . . The particular rule applies, despite the non-exertional limitations, "if the individual is capable of performing a wide range of jobs at the designated level—i.e., sedentary, light or medium." Kirk v. Secretary of HHS, 667 F.2d 187 [improperly cited]; Social Security Rulings 83-10. In this case, the [Plaintiff's] non-exertional impairments do not significantly erode the vocational base contemplated by the medical-vocational rules. Accordingly, the undersigned concludes that expert vocational testimony is not needed in this case to assess the claimant's work capability.

(Id. at 25).

The ALJ conclusorily asserts that Plaintiff's non-exertional limitations do not significantly erode her occupational base. While the decision does cite to two SSRS, the ALJ did not provide an explanation of how either of the SSRs cited supports such a conclusion. See Buffington v. Comm'r of

---

[8] SSR 85-15 may well be on point, as argued by Defendant in its brief. (Def.'s Br. 12). Because it was not cited in support of the ALJ's decision to not rely on vocational evidence, it cannot be relied upon in defense of that decision, however on point it may be.

Soc. Sec., No. 12-100, 2013 WL 796311, at *10-11 (D.N.J. March 4, 2013) (finding "it is not clear that the ALJ based his actual analysis on any of the SSRs cited, despite the boilerplate references" and remanding for further consideration of how the plaintiff's limitations affect her ability to perform substantial gainful employment). Thus, it is not "crystal-clear" that either of these SSRs is "probative as to the way in which the nonexertional limitations impact Plaintiff's occupational base." Allen, 417 F.3d at 407. As such, the Court will remand.

On remand, the ALJ may still determine that consultation of a vocation expert is unnecessary. In fact, it is possible that the ALJ will rely on these very SSRs and reach the same decision. If so, however, he must make clear that this is what he is doing and cite the specific portions of these SSRs that he believes support such determination. At this juncture, however, the Court will remand because of the ALJ's failure to fully explain why the nonexertional limitations do not significantly erode Plaintiff's occupational base. Because the Court finds that remand on this point is necessary, it need not address Plaintiff's other arguments.

An Order and Final Judgment consistent with this Opinion shall issue on this date.

_s/_Renee Marie Bumb
RENÉE MARIE BUMB
United States District Judge

DATED: September 29, 2017